Harry BOUT, Plaintiff,

v.

Dan L. BOLDEN, John Marshall, Everett Sandell, and Jason Allen Davies, Defendants.

No. 96–CV–10071–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Oct. 5, 1998.

Hugh M. Davis, Jr., Martin Adamian, Constitutional Litigation Associates,P.C., Detroit, MI, for Plaintiff.

Deborah Garcia–Luna, Assistant Attorney General, Corrections Division, Lansing, MI, for Defendants.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CLELAND, District Judge.

### I. Introduction

This prisoner civil rights complaint, brought pursuant to 42 U.S.C. § 1983, is before the court on defendants' motion to dismiss or for summary judgment. The matter was referred to Magistrate Judge Charles E. Binder for general case management and for submission of a report and recommendation ("R & R") regarding any dispositive motions, pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge submitted an R & R on November 13, 1997. Plaintiff filed objections to the R & R and defendants filed a response thereto. The magistrate judge recommends summary judgment be entered for defendants on all claims. For the reasons that follow, the court accepts and adopts the report as supplemented, and GRANTS summary judgment for defendants.

The facts giving rise to plaintiff's lawsuit are adequately set forth by the magistrate judge in his R & R and are incorporated herein by reference. The court will restate material facts as necessary for resolution of the plaintiff's objections.

### II. Standards

#### A. Summary Judgment

Under Fed.R.Civ.P. 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do

not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of some factual dispute does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.

The burden placed upon the movant for summary judgment is to show that the non-moving party has failed to establish an essential element of its case upon which the non-moving party would bear the ultimate burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. But the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim. *Id.* at 323, 106 S.Ct. 2548. Once the moving party meets this burden, the burden passes to the non-moving party to establish the existence of a disputed factual element necessary to its case with respect to which it bears the burden of proof. *Id.* at 323, 106 S.Ct. 2548. The non-moving party must show that there is sufficient evidence for a jury to return a verdict in its favor, *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989), *i.e.,* that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant. *Id.* at 1476. The non-moving party must present affirmative evidence on critical issues. *Id.* at 1477.

#### B. Preclusion of evidence

As set forth in the court's order sanctioning the plaintiff under Rule 11 of the Federal Rules of Civil Procedure, a court may exercise its discretion to preclude a party from presenting evidence in support of its claim or defense in the event that the court is persuaded that the party has unreasonably and without justification interfered with discovery or committed a fraud on the court. The portions of plaintiff's response to the defendants' motion for summary judgment and the

portion of the plaintiff's objections to the Magistrate Judge's Report and Recommendation dealing with plaintiff's "retaliation" claim are stricken from the court's consideration, although they shall remain physically within the court's file.

## III. Discussion

Plaintiff has been found to have committed a fraud on the court. As a part of the plaintiff's sanction, the court ordered that portions of the plaintiff's evidence—as well as portions of his response to the defendants' motion for summary judgment and his objections to the Magistrate Judge's Report and Recommendation—be stricken. In view of this Order, the portion of the defendants' motion relating to the "retaliation" claim stands unchallenged. Because the motion in this respect is uncontested, it must be granted as long as it clearly enough points to an absence of any genuine issue of material fact. As demonstrated in the Magistrate Judge's Report and Recommendation and below, the defendants' motion in this respect does so demonstrate. For those reasons, that portion of the motion will be granted.

In addition to reviewing the other, nonstricken portions of the plaintiff's objections, in the interest of judicial economy the merits of the stricken objections will be considered and analyzed herein as well. The court finds that it would have reached the same result on the merits and in the absence of plaintiff's fraud, with plaintiff's objections and evidence fully considered.

Plaintiff states essentially nine objections to the magistrate judge's R & R. These objections are addressed in turn.

### A. Summary judgment

■ Primarily, plaintiff contends that the magistrate judge incorrectly applied the standard of review required for adjudicating a summary judgment motion. Plaintiff argues that the magistrate judge made a credibility finding related to plaintiff's affidavit and failed to draw all inferences in plaintiff's favor, as the party opposing summary judgment. For the most part, the court disagrees with plaintiff's contention. The magistrate judge properly stated the standard of review and properly analyzed the evidence of

record. The magistrate judge appropriately did not fully credit plaintiff's testimony where it is speculative, contradicted by other documentary evidence, and calls for inferences that cannot reasonably be resolved in plaintiff's favor. To the extent the court disagrees with the magistrate judge's factual analysis, those disagreements are identified below in discussion of plaintiff's specific objections to the recommendations as to his specific claims.

### B. Eleventh Amendment

Plaintiff's argument regarding whether defendants have been sued in their individual capacity does not state an objection to the R & R. This argument focuses on the court's order denying without prejudice plaintiff's motion to amend the complaint to specify that defendants are being sued in their individual capacities. This argument is without merit as an objection to the R & R and need not be discussed herein.

### C. Eighth Amendment: bunk assignment

In his R & R, the magistrate judge appropriately set forth the law governing Eighth Amendment claims:

As set forth in *Ingraham*, "after incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley [v. Albers]*, 475 U.S. [312,] 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 [ (1986) ] (quoting *Ingraham [v. Wright]*, 430 U.S. [651,] 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 [ (1977) ] ). Conduct violative of the Eighth Amendment must be characterized by "obduracy and wantonness, not inadvertence or error in good faith." *Whitley*, 475 U.S. at 319, 106 S.Ct. 1078.

The drafters of the Constitution were primarily concerned with preventing "torture[s] and other barbar[ous]" punishments. *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) .... In addition, the Supreme Court has found "repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing soci-

ety.'" *Estelle,* 429 U.S. at 102, 97 S.Ct. 285 (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)).

A prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be "sufficiently serious," and second, the infliction of pain must be "unnecessary and wanton." *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Furthermore, a prison official must know of and disregard an excessive risk to inmate health or safety. *Farmer,* 114 S.Ct. at 1979. Thus, a prison official must have a "sufficiently culpable state of mind." *Id.* at 1977. That state of mind is one of "deliberate indifference" to inmate health or safety. *Id.* Therefore, Eight Amendment suits against prison officials must satisfy a "subjective" requirement. *Id.*

(R & R at 16–17 (citations altered).)

The magistrate judge concluded that defendant John Marshall lacked authority and in fact took no part in making plaintiff's bunk assignment and neither had knowledge of medical details requiring assignment of a bottom bunk to plaintiff nor of plaintiff's grievance related to his assignment of a top bunk. Plaintiff argues that his affidavit alleges otherwise and that the magistrate judge's conclusions were reached after improperly discounting plaintiff's testimony and failing to draw all inferences in favor of plaintiff.

■ Review of the affidavits of defendant Marshall and the plaintiff reveals that there is no material conflict regarding the issue of whether defendant Marshall took part in assigning plaintiff's bunk or had knowledge of plaintiff's medical details. Defendant Marshall testifies that he does not assign prisoners to bunks nor did he have knowledge that plaintiff had a medical detail for a bottom bunk. Plaintiff has no evidence to contradict this testimony. According to plaintiff, defendant Marshall told him of his assignment to a top bunk upon his return from a court appearance and refused to move him after plaintiff protested that he had impaired vi-

sion and needed a bottom bunk. (Pl. Aff. at 3, Pl. Resp. (dkt# 23), Ex. 4.) Plaintiff alleges that defendant Marshall told him: "I don't want to hear about it, your [sic] locking in # 112." (*Id.*) In support of this allegation, plaintiff alleges that he filed a grievance on July 15, 1994 against defendant Marshall for assigning him to a top bunk, which plaintiff claims was a dangerous health hazard for him. (Pl.Resp., Ex. 1.) Plaintiff also alleges that on both July 19th and 20th he received a bottom bunk medical detail from the nurse and the doctor at the prison and on both occasions after return to his cell the "staff" told him that "per Inspector Marshall you will not be moving." (*Id.* at 3–4.) Plaintiff remained in his top bunk until he fell on September 7, 1994 and was seriously injured.

Even taking plaintiff's statement as true, plaintiff has proffered no evidence that would contradict defendant Marshall's claim that he did not know of the bottom bunk medical detail nor of any related grievances. Plaintiff alleges that he told defendant Marshall that he required a bottom bunk due to his allegedly poor sight in one eye. Plaintiff claims that Defendant Marshall was indifferent, directing plaintiff to take his bunk as assigned. There is no evidence to infer that defendant Marshall was indifferent to whether plaintiff would suffer harm, however, nor any indication that he believed plaintiff's complaint. In fact, the medical records suggest that defendant Marshall more likely acted out of disbelief of plaintiff's complaints and a desire not to encourage plaintiff's attempt to circumvent standard procedures or control the conditions of his confinement. One cannot draw a reasonable inference that defendant Marshall believed the top bunk assignment to be a "serious" health hazzard to plaintiff, even in the face of plaintiff's complaint of poor eyesight.

Defendant Marshall also testified that he didn't know of any grievances filed against him related to plaintiff's bunk assignment. Aside from plaintiff's affidavit, there is no evidence that a grievance was ever filed or processed. Significantly, there is no evidence to contradict defendant Marshall's testimony that he never received a copy of any grievance, and there is no evidence that

plaintiff filed a grievance in 1994 or followed up on it when it was not processed. The evidence in the record would not support a reasonable inference that defendant Marshall was aware of any grievances related to plaintiff's top bunk assignment.

As to whether defendant Marshall knew of the medical details, the only proof is plaintiff's statements that the doctor, on one occasion, and the unidentified "staff," on two other occasions, called the control center to find out why plaintiff was not assigned a bottom bunk and the staff members told plaintiff that he would stay put "per Marshall's orders." Even if admissible evidence, these statements are not evidence that defendant Marshall knew of the details or knew of a dangerous condition or serious medical need and was deliberately indifferent to it. Notably, this affidavit testimony is hearsay regarding defendant Marshall's statements. Moreover, plaintiff's testimony establishes at most that, upon plaintiff's return from court, defendant Marshall ordered that plaintiff remain in his assigned bunk and that the order remained in effect. The record evidence is not sufficient to support an inference that defendant Marshall was made aware of the medical details or that he made separate, independent decisions each time the control center was contacted about plaintiff's bunk assignment, especially in light of defendant Marshall's denial of any such knowledge.

Furthermore, even if defendant Marshall knew the doctor had given plaintiff a medical detail to be assigned to a bottom bunk, in light of plaintiff's medical records indicating possible malingering with no clear diagnosis of poor eyesight, (Def.Mot.(dkt# 17), Ex. 2,) defendant Marshall's refusal to comply with the medical detail would not constitute conscious disregard for an excessive risk to plaintiff's health and safety.[1] Plaintiff slept in his top bunk from July 20, 1994 through September 7, 1994 without incident before he claims to have been injured by falling. At most, defendant Marshall may have been negligent; however, that claim lies in state tort law and does not give rise to a federal constitutional violation.

The court accepts the magistrate judge's conclusion that plaintiff cannot "demonstrate that defendant Marshall 'unnecessarily and wantonly' inflicted pain on plaintiff sufficient to rise to 'deliberate indifference'" within the meaning of the Eighth Amendment.

### D. Eighth Amendment: dental treatment

Plaintiff does not object to the magistrate judge's statement of the law, and plaintiff reasserts the same arguments that he made in his response to defendants' motion. Plaintiff claims that for three weeks defendant Everett Sandell, D.D.S., refused to treat him and refused to send him to an offsite hospital where he could receive anesthesia during the treatment of his damaged teeth. Plaintiff further claims that Dr. Sandell instead "needlessly and forcefully drilled one of Plaintiff's molars against his will," without anesthesia. (Pl. Obj. at 7.) The magistrate judge concluded that Dr. Sandell's actions were taken in the course of his treatment of plaintiff's teeth and, as such, were not undertaken in a manner deliberately indifferent to plaintiff's serious medical needs. In reaching that conclusion, the magistrate judge reasoned that plaintiff must have consented to treatment without anesthesia, as Dr. Sandell testified, because Dr. Sandell would not have been able to perform the dental procedure without the patient's full cooperation. Plaintiff objects that the magistrate judge improperly made a factual finding that plaintiff volunteered to the procedure, and plaintiff contends that his affidavit provides evidence that he did not so volunteer, that his teeth were forcefully drilled against his will, and that he suffered excruciating pain amounting to cruel and unusual punishment under the Eighth Amendment.

The objection raises two issues that warrant discussion: first, whether there is a question of fact as to whether plaintiff volun-

---

1. The medical details do not purport to control the actions of Department of Corrections staff, but rather instruct plaintiff to take a bottom bunk. (Pl.Resp., Ex. 2, 3.) The details do not provide any basis for this prescription and, in the absence of such, refusal to accommodate these instructions would not constitute evidence of knowledge of and disregard for a serious medical condition.

tarily accepted treatment without anesthesia; second, even if the procedure was accomplished without consent, whether the claim properly was denied as one for deliberate indifference to serious medical needs.

■ With regard to the first issue, plaintiff clearly testified in his affidavit that he was forcefully held down and subjected to dental work without the benefit of anesthesia. The court cannot agree with the magistrate judge's conclusion that this testimony is merely a confirming version of defendant Sandell's testimony. Plaintiff has proffered sufficient evidence that defendant Sandell treated plaintiff without consent in order to create a dispute of fact. Thus, the court rejects that conclusion reached by the magistrate judge.

The second issue relates to whether the dispute of fact is material, so as to preclude summary judgment. The court finds that it is not. Plaintiff's argument complains of treatment without anesthesia as deliberate indifference to a serious medical need. This raises the question whether a plaintiff may legitimately separate one portion or procedure from a "medical treatment" for deliberate indifference scrutiny. In other words, is it proper to view defendant Sandell's treatment of plaintiff as two discreet "treatments"—one consisting of tooth repair and the other the control or relief of pain associated with that tooth repair—or must the entire treatment be viewed as a whole? In this case, the court finds the latter approach to be the correct one.

Plaintiff's "serious medical need" was not for anesthesia, but rather for tooth repair. Plaintiff's disagreement with the course of treatment—the decision to drill without anesthesia rather than further delay treatment given the minor nature of the repair and relatively brief period of pain—does not state a constitutional claim. Had a defendant gratuitously drilled plaintiff's teeth for no good medical reason, then the evidence would clearly support a finding of willful and wanton infliction of pain and plaintiff would have supported a direct claim for cruel and unusual punishment contrary to the Eighth Amendment. However, where pain was an incidental part of a dentist's chosen course of treatment, the question is not whether Dr. Sandell was indifferent to the incidental pain, but rather whether he was indifferent to plaintiff's existing dental condition. Plaintiff conceivably may have some other claim against Dr. Sandell—for battery, perhaps, for malpractice, perhaps—but he does not have a constitutional claim arising out of his treatment, which by all accounts was successful in healing plaintiff's teeth.

■ The question presented here was squarely addressed by the Seventh Circuit in *Snipes v. DeTella*, 95 F.3d 586 (7th Cir.1996). In that case, the prisoner plaintiff sued a prison doctor for deliberate indifference arising out of the removal of his toenail without the use of an anesthetic. The court held that the medical treatment could not be parsed into two discrete acts—the treatment of the toe and the refusal to give an anesthetic—but rather had to be viewed as one course of treatment. The court reasoned that "[r]emoving a toenail (the treatment) involves a number of minor medical decisions, including whether the procedure merits a local anesthetic. Such decisions are 'classic example[s] of matter[s] for medical judgment,' *Estelle*, 429 U.S. at 107, 97 S.Ct. 285 . . . and thus are questions of tort, not constitutional law." 95 F.3d at 591. The court concluded that " 'a mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an Eighth Amendment claim of deliberate indifference.' " *Id.* (quoting *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir.1991)) (citation omitted).

■ The court cannot say whether the pain associated with a brief dental drilling is more or less serious than that related to the removal of a toenail. Nonetheless, the act of drilling teeth for treatment without anesthesia—at least in the circumstances alleged here—is not the sort of barbarous and wanton infliction of pain from which a prisoner is protected by the Eighth Amendment. Dental treatment anesthesia is a relatively modern convenience. Indeed, some patients even now prefer to undergo dental treatment without a local anesthetic merely to avoid the lingering effects on gums and lips. Certainly, when possible and convenient, the numb-

ing of pain before dental drilling is preferred in most cases. Nevertheless, where there is a medical reason that an anesthetic or anesthesia cannot be safely or conveniently provided, that a prisoner/patient must endure three to five seconds of drilling procedure is not cruel and unusual punishment as contemplated by the Eighth Amendment. As noted above, such a decision by a dentist might be alleged to be malpractice, or even battery; however, absent a wanton infliction of pain (i.e., without rational justification) the treatment does not run afoul of the Eighth Amendment.

The *Snipes* court also held that even if the desire for an anesthetic "could be considered a separable medical need under the Eighth Amendment ... the denial of that need was not 'objectively, sufficiently serious' to constitute the 'denial of the minimal civilized measure of life's necessities,' whatever the doctor's motives might have been." 95 F.3d at 591. The court reasoned that "[t]o the extent such a decision is medically erroneous, it cannot be characterized as disregard for 'an *excessive* risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 114 S.Ct. at 1979). The court rejected the plaintiff's argument that "a risk of needless pain" was sufficient to make out an Eighth Amendment deliberate indifference claim, and held:

> To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd. It would also be absurd to say ... that the Constitution requires prison doctors to administer the least painful treatment. That may be preferable, but the Constitution is not a medical code that mandates specific medical treatment.

> \*    \*    \*    \*    \*    \*

Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations. *A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.1974), *vacated and remanded on other grounds sub nom. Cannon v. Thomas*, 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39 ... (1974).

95 F.3d at 592(emphasis added). As in *Snipes*, the pain experienced during treatment "was not constitutionally serious and there is no evidence the failure to administer an anesthetic aggravated [the plaintiff's] condition." *Id.*

Accordingly, for the reasons expressed above and for those set forth by the magistrate judge which are not inconsistent with this opinion, the court adopts the magistrate judge's conclusions. Summary judgment is granted for defendant on plaintiff's claim of deliberate indifference against defendant Everett Sandell.

### E.   Retaliation

Plaintiff claims that defendants conspired to retaliate against him for having exercised his First Amendment rights to file grievances and to complain about ill treatment. In the Order Sanctioning Plaintiff Under Rule 11 of the Federal Rules of Civil Procedure, this court determined that the plaintiff has falsified at least some of the evidence purporting to support this claim. A fraud on the court will not be tolerated and the plaintiff's claim for this reason alone is to be rejected. Notwithstanding, his claim would not survive even a review on the merits.

The Sixth Circuit has acknowledged the requirement that to state a claim, a prisoner's "retaliation claims arising from the exercise of First Amendment rights [must] be shocking to the conscience." *McLaurin v. Cole*, 115 F.3d 408, 410–11 (6th Cir.1997)(citing *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir.1988))(*see also* cases cited therein). In this case, plaintiff claims the retaliation took the form of a prison transfer and denial of access to the courts. As the magistrate judge has concluded, however, plaintiff cannot make out a claim that defendants engaged in either of these activities in violation of plaintiff's constitutional rights or that plaintiff suffered any constitutional injury. (*See* R & R at 25–30.) Absent such a

showing, plaintiff has failed to allege facts to support his retaliation claim because he cannot prove defendants took conscience-shocking action in retaliation for plaintiff's exercise of his First Amendment rights. Thus, on the merits and even in the absence of plaintiff's contempt and fraud on the court, the court would adopt the magistrate judge's reasoning and conclusion. Summary judgment is granted in favor of defendants on plaintiff's retaliation claim first because the motion stands unopposed, and alternatively on the merits of the analysis found in the magistrate judge's R & R.

### F. Conspiracy

Plaintiff has claimed that defendants conspired to deprive him of his civil rights in retaliation for exercising his First Amendment rights. As the magistrate judge stated, to support a conspiracy claim, a plaintiff must show " 'there was a single plan, that the alleged conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury.' " (R & R at 30 (quoting *Hooks v. Hooks,* 771 F.2d 935 (6th Cir.1985)).)

█ The magistrate judge concluded that plaintiff failed to plead specific facts showing the existence or execution of a conspiracy or an agreement to commit an act which deprived plaintiff of his civil rights. (R & R at 31.) The court would agree with the magistrate judge's assessment, based primarily on the fact that plaintiff has failed to show that his constitutional rights were violated or an injury was sustained as a result of the alleged conspiracy.

Therefore, on the merits and even in the absence of plaintiff's fraud, the court would adopt the magistrate judge's conclusions and recommendation on this issue. Summary judgment is granted on plaintiff's conspiracy claim for those alternative reasons.

### G. Qualified Immunity

As the court would accept the magistrate judge's conclusions to the extent he recommends summary judgment on all substantive claims, the issue of qualified immunity need not be addressed.

### H. Defendant Davies

On the merits and in the absence of plaintiff's fraud, plaintiff could not establish that there was a conspiracy in which his constitutional rights were violated. Defendant Davies' conduct, therefore, even if it were undertaken in concert with state officials, did not cause plaintiff a constitutional injury. Summary judgment on the civil rights claims against defendant Davies is appropriately granted.

### IV. Conclusion

Accordingly, portions of plaintiff's objections dealing with the retaliation claim are hereby STRICKEN. Even in the absence of plaintiff's fraud, those objections, for the reasons stated, would be REJECTED. Other, non-stricken objections are REJECTED. The court ACCEPTS and ADOPTS the magistrate judge's Report and Recommendation on its merits, except as specifically rejected or modified herein. Defendants' motion for summary judgment is GRANTED and summary judgment is GRANTED to all defendants on all claims.